**United States District Court**
For the Northern District of California

1

2

3                                                        **\*E-FILED 9/26/07\***

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

8                          SAN JOSE DIVISION

9    ESTATE OF ZIAM BOJCIC, et al.,              NO. C05 3877 RS

10            Plaintiffs,                          **ORDER GRANTING IN PART**
                                                   **AND DENYING IN PART**
11       v.                                        **DEFENDANTS' MOTION FOR**
                                                   **SUMMARY JUDGMENT**
12   CITY OF SAN JOSE, et al.,

13            Defendants.

14   _____/

15

16                          I.  INTRODUCTION

17        On September 24, 2006, San Jose Police Officer Donald Guess, who was in uniform and on

18   duty, stopped at a Starbucks store to purchase an iced tea.  The Starbucks manager asked Officer

19   Guess to address a situation involving a patron, Ziam Bojcic, who was sitting outside at a table

20   provided by Starbucks, consuming a beverage purchased from Starbucks, and smoking a tobacco

21   cigarette.  Approximately one month earlier, Starbucks had purportedly instituted a "no smoking"

22   policy.  There is no indication that signs to that effect were posted, rather it appears Starbucks

23   attempted to enforce the policy by having its employees go outside and instruct patrons not to

24   smoke.  Arguments had previously occurred between the Starbucks manager and patrons regarding

25   the matter.  Additionally, there is some evidence that ashtrays were sometimes placed on the outside

26   tables, although it is unclear whether or not they were placed there by Starbucks.

27        There is no real dispute that Officer Guess was entitled to approach Bojcic to attempt to

28   resolve the Starbucks manager's concerns.  Whether Office Guess had reasonable suspicion to

                                            1

1  believe any crime had been committed, however, is a more difficult question.  Officer Guess

2  contends he believed Bojic might have been violating a city ordinance by smoking, or that he was

3  trespassing, if he had previously been asked to leave.  In any event, there is no dispute that upon

4  being confronted by Officer Guess, Bojcic ultimately became violent, physically attacking the

5  officer.   The altercation between the two men escalated, with the result that Officer Guess shot and

6  killed Bojcic.

7       Defendants now move for summary judgment, contending undisputed facts establish Officer

8  Guess committed no constitutional violation, and even if such a violation occurred, that he is entitled

9  to qualified immunity on plaintiffs' claims.  Defendants further contend that there is no basis to

10  impose liability for the officer's actions on the City of San Jose under *Monell v. New York City Dept.*

11  *of Social Services*, 436 U.S. 658 (1978).  Because the circumstances leading to violence during the

12  incident involve material factual disputes, the motion for summary judgment based on the asserted

13  lack of a constitutional violation or entitlement to qualified immunity will be denied.  The City's

14  motion seeking a ruling that there is no basis to impose liability under *Monell*, however, will be

15  granted.

16

17                                II. BACKGROUND

18       Bojcic was born and raised in Bosnia, and during that country's civil war in 1992 was

19  imprisoned on the basis of his ethnicity.  After immigrating to this country, Bojcic habitually

20  frequented a Starbucks franchise on South Winchester Boulevard in San Jose, where he and other

21  refugees from Bosnia would meet to converse, drink coffee, and, in many instances, smoke

22  cigarettes.  Plaintiffs contend that Bojcic was "non-violent and friendly," that he was "well liked by

23  his peers," but that he "was known to be mentally unstable."

24       Plaintiffs further assert that Bojcic also was known to have unspecified difficulties with his

25  legs, such that he "would often rest his feet on a nearby chair."  On the day of the incident

26  underlying this action, Bojcic was seated outside the Starbucks, having his "usual daily coffee"

27  purchased from Starbucks and "listening to the conversations with his peers."

28       As noted, Officer Guess arrived at the Starbucks seeking to purchase a beverage for himself,

*United States District Court*
For the Northern District of California

2

United States District Court
For the Northern District of California

1   and not in response to any call.  While Officer Guess was seated inside the facility, Starbucks

2   manager Angela McCullough approached and asked him to speak to Bojcic.  McCullough indicated

3   there had been prior problems with Bojcic and his smoking, and that he made certain Starbucks

4   employees feel "uncomfortable."  Plaintiffs point out there is no evidence  that Starbucks employees

5   had *ever* previously approached Bojcic to warn him against smoking or to raise any other issue.[1]

6   Although McCullough requested Officer Guess to assist in getting Bojcic to leave the premises,

7   there is no indication she told the officer that Bojcic had been asked to leave but had refused.

8          Eyewitnesses differ as to some details regarding the events that followed, but the basic

9   picture that emerges is as follows:  Officer Guess approached Bojcic and began talking to him.  In

10  the view of at least one witness, Officer Guess was confrontational, approaching in a "cowboy"

11  manner, while other witnesses characterize his demeanor as being professional. Bojcic complied

12  with Officer Guess's direction to extinguish the cigarette he was smoking.  Officer Guess then asked

13  Bojcic to stand.  Bojcic did not comply, and pointed at his foot, telling the officer that it hurt.

14  According, to one witness, Officer Guess then said, "I can be an asshole, or I can be a nice person."

15         When Bojcic still did not stand, Officer Guess placed his hands on him, in an apparent effort

16  to pull him to his feet.  Although the record is unclear as to how forceful or aggressive that gesture

17  was, there is evidence that it was something more than simply offering a hand to assist Bojcic in

18  standing.[2]  At least one witness has testified that Officer Guess said to Bojic that he was "taking

19  him."  Bojcic then "jumped up" and grabbed a chair.  According to some witnesses, Bojcic was

20  holding the chair defensively, tilted up, but with two of its legs still on the ground.  Other testimony

21  suggests Bojcic was holding the chair in the air, although perhaps still in basically a defensive

22  posture.  Officer Guess testified that Bojcic was holding the chair "up by his right shoulder, not

23

24         [1]  Plaintiffs acknowledge, however, that approximately one week earlier, another San Jose
25  Police officer had been dispatched "to a disturbance call involving Mr. Bojcic at the same
    Starbucks."  Thus, even assuming plaintiffs are correct that there had been no prior notification to
26  Bojcic regarding his conduct from Starbucks employees *directly*, it appears he knew or should have
    known that there was some issue with his behavior.

27         [2]  Officer Guess admits having reached out intending to make contact with Bojcic's elbow
    "encouraging him to stand up" but denies that he actually touched Bojcic at all prior to Bojcic
28  standing up.

3

1  unlike how you would hold a bat for a baseball."

2  Officer Guess then discharged his taser at Bojcic.  Although the taser darts struck Bojcic, he

3  was not disabled.  Bojcic threw the chair at Officer Guess and physically attacked him.  Officer

4  Guess moved backwards, but soon the two men were engaged in a fistfight.  It appeared to several

5  witnesses that Bojcic was winning the fight.  Officer Guess eventually pulled out his firearm and

6  fired a shot at the ground, in warning.  Then he twice shot  Bojcic in the legs, but Bojcic continued

7  to attack.  Officer Guess then fired into Bojcic's body.  Bojcic fell to the ground, fatally wounded.

8

9  III. STANDARDS

10  Summary judgment is proper "if the pleadings and admissions on file, together with the

11  affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

12  party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The purpose of summary

13  judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*,

14  477 U.S. 317, 323-324 (1986).

15  The moving party "always bears the initial responsibility of informing the district court of the

16  basis for its motion, and identifying those portions of 'the pleadings and admissions on file, together

17  with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material

18  fact." *Id.* at 323.  If it meets this burden, the moving party is then entitled to judgment as a matter of

19  law when the non-moving party fails to make a sufficient showing on an essential element of his

20  case with respect to which he bears the burden of proof at trial. *Id.* at 322-23.

21  The non-moving party "must set forth specific facts showing that there is a genuine issue for

22  trial." Fed. R. Civ. P. 56(e).  The non-moving party cannot defeat the moving party's properly

23  supported motion for summary judgment simply by alleging some factual dispute between the

24  parties.  To preclude the entry of summary judgment, the non-moving party must bring forth

25  material facts,  i.e., "facts that might affect the outcome of the suit under the governing law  . . . .

26  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby,*

27  *Inc.*, 477 U.S. 242, 247-48 (1986).  The opposing party "must do more than simply show that there

28  is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*,

**United States District Court**
For the Northern District of California

4

United States District Court

For the Northern District of California

1 | 475 U.S. 574, 588 (1986).

2 | The court must draw all reasonable inferences in favor of the non-moving party, including

3 | questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker*

4 | *Magazine, Inc.*, 111 S.Ct. 2419, 2434-35 (1991) (citing *Anderson*, 477 U.S. at 255); *Matsushita*

5 | *Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986); *T.W. Elec. Service v. Pacific Elec.*

6 | *Contractors*, 809 F.2d 626, 630 (9th Cir. 1987).  It is the court's responsibility "to determine

7 | whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background

8 | or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor

9 | based on that evidence." *T.W. Elec. Service*, 809 F.2d at 631.  "[S]ummary judgment will not lie if

10 | the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury

11 | could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  However, "[w]here the

12 | record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there

13 | is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

14 | Because the defendants' motion is primarily based on their contentions that Officer Guess

15 | committed no constitutional violation or is at least entitled to qualified immunity for his conduct, the

16 | two-step analytical framework of *Saucier v. Katz*, 533 U.S. 194 (2001) applies.  As set forth in that

17 | case:

18 |
19 | A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. [citations omitted]

20 |
21 | . . . . . if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask  whether the right was clearly established.  This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition . . . .

22 |

23 |
24 | 533 U.S. at 201.

25 |

26 | III. DISCUSSION

27 | A. Constitutional Violations

28 | Defendants' motion for summary judgment relies heavily on the Ninth Circuit's opinion in

5

*Billington v. Smith*, 292 F.3d 1177 (9th Cir. 2002), which held that a trial court erred in denying a

motion for summary judgment based on qualified immunity, where a police officer also shot and

killed a person after an escalating confrontation.  Because the factual similarities and differences

between this case and *Billington* are both critical to the analysis, it will be described at some length.

The police officer sued in *Billington*, David Smith, was off duty and driving home at night in

his unmarked police car when the decedent, Ryan Hennessey, passed him, tires squealing.

Hennessey overcorrected when he pulled back into his lane, almost hit a parked car, overcorrected

again and careened into the oncoming lane, almost causing a head-on collision with an approaching

car. Detective Smith estimated that Hennessey was driving 70 m.p.h. in a 30 or 35 m.p.h. residential

zone. Detective Smith turned on his blue police lights and gave chase.

Instead of pulling over, Hennessey turned off his headlights, and accelerated. Detective

Smith turned on his police siren and radioed his dispatcher that he was pursuing a car.  Shortly

thereafter, Hennessey crashed into a curb.  Since Detective Smith had radioed the dispatcher, he

expected uniformed officers to arrive and assist him within minutes. Not knowing how badly injured

Hennessey might be, however, Detective Smith did not wait for backup. He approached  the

wrecked car, with his gun in one hand and his flashlight in the other, intending to render first aid and

arrest Hennessey for felony reckless driving.

Hennessey sat slumped in the driver's seat, his eyes closed. He appeared unconscious, but in

fact he was just very drunk.  Before Detective Smith made any effort to handcuff Hennessey or have

him exit the car, Hennessey started hitting Detective Smith, eventually grabbing him by the throat

and by his tie. Detective Smith tried to back away, leaving Hennessey behind the closed car door,

but Hennessey clambered out of the car window, hanging onto Detective Smith. The fight continued

to escalate, and ultimately Detective Smith fired his gun, hitting and killing Hennessey.  See

*Billington*, 292 F.3d at 1179-1181.

The *Billington* plaintiff contended that Detective Smith had committed any number of

tactical errors in his approach to the situation, including: (1) choosing to initiate the traffic stop, even

though he was in plainclothes with his family; (2) failing to tell his dispatcher where he was; (3)

approaching Hennessey with his hands full; (4) leaving his duty belt, with spray, handcuffs, holster

6

1   and baton in his car; (5) waking Hennessey before backup arrived; (6) telling his daughter to bring

2   the handcuffs to him; and (7) failing to unload his gun. *Id.* at 1186.

3          On the record before it, the trial court in *Billington* concluded that "assuming Hennessey's

4   hand was on the gun, 'as of the moment Hennessey grabbed Smith's gun . . . Smith had no choice

5   but to shoot." *Id*. at 1183.  The trial court nonetheless denied summary judgment, because it found

6   questions of fact  existed as to whether the detective's tactics recklessly created the situation in

7   which force would have to be used. *Id*.

8          The Court of Appeals agreed that it was unquestionably reasonable for Detective Smith to

9   fire if Hennessey's hand was on the gun.  The court went further and concluded that even though

10  there was a question of fact as to whether Hennessey and Detective Smith were grappling over the

11  gun at the moment of the shooting, that dispute was not *material*, and Smith was justified in firing

12  his weapon under all the circumstances existing by that point in time. *Id.*

13         The *Billington* court then turned to the question of whether Detective Smith could

14  nonetheless potentially be held liable under the theory that his alleged tactical errors had created or

15  contributed to the circumstances existing at the time of the shooting.  "[T]he theory is basically that

16  Detective Smith shouldn't have gotten himself into the situation, so he couldn't constitutionally

17  shoot his way out of it." *Id.* at 1185-86.  After extensively reviewing the precedents, the *Billington*

18  court summarized the law as follows:.

19         Even if an officer negligently *provokes* a violent response, that negligent act will not
           transform an otherwise reasonable subsequent use of force into a Fourth Amendment
20         violation. But if . . . an officer intentionally or recklessly provokes a violent response,
           and the provocation is an independent constitutional violation, that provocation may
21         render the officer's otherwise *reasonable* defensive use of force *unreasonable* as a
           matter of law. In such a case, the officer's initial unconstitutional provocation, which
22         arises from intentional or reckless conduct rather than mere negligence, would
           proximately cause the subsequent application of deadly force.
23

24  *Id.* at 1190-91.

25         The Court then concluded that Detective Smith was entitled to summary judgment because

26  the undisputed facts showed he was at most negligent, and "none of Detective Smith's supposed

27  errors could be deemed intentional or reckless, much less unconstitutional, provocations that caused

28  Hennessey to attack him." *Id.* at 1191.

7

United States District Court
For the Northern District of California

1   In the present case, defendants argue that plaintiffs' theory here is indistinguishable from that

2   rejected in *Billington,*.[3]    Officer Guess, they insist, was fully justified in shooting Bojcic by the

3   time the shots were fired and nothing Officer Guess did prior to that time rises to the level of a

4   constitutional violation that would render the subsequent use of force unlawful.

5   Although the question is close, *Billington* does not warrant entry of summary judgment on

6   the present record in this case for several reasons.  First, this incident began in a very different

7   context from that presented  in *Billington.*  The law enforcement officer in that case personally

8   witnessed dangerous and unquestionably illegal conduct.  He approached Hennessey *intending* to

9   *arrest* him for felony reckless driving.  In contrast, here Officer Guess approached Bojcic believing

10  only that there was a *possibility* he had committed a non-dangerous trespass or perhaps was in

11  violation of some unspecified anti-smoking ordinance.  Although these very different factual

12  circumstances do not eliminate the requirement of *Billington* that there be *some* "independent

13  constitutional violation" provoking the situation before liability can be imposed, they do mean that

14  Officer Guess was far more limited as to what he constitutionally could properly do when

15  confronting Bojcic.

16  Moreover, defendants have failed to establish as a matter of law that Officer Guess held a

17  reasonable suspicion that a crime had been committed.  As noted above, there is no indication that

18  Officer Guess had reason to think that Bojcic had been asked to leave the premises.  By all

19  appearances, Bojcic was a paying customer of a public business.  The concerns expressed by the

20  Starbucks manager perhaps would have justified a request that Bojcic leave the premises, but a

21  suspicion that he might be trespassing *prior* to any such request is dubious, at best.  Similarly,

22  Officer Guess's vague belief that there *might* be some city ordinance prohibiting smoking on a

23  outdoor patio is a tenuous basis to form a reasonable suspicion of criminal activity, particularly in

24  light of the undisputed fact that Bojcic had extinguished the cigarette at Office Guess's request prior

25  to the alleged physical contact between them.

26

27  [3] Indeed,  the expert declaration plaintiffs offer with opinions regarding Officer Guess's
    strategic choices is from the same witness who provided opinions regarding Detective Smith in
28  *Billington.*

8

United States District Court

For the Northern District of California

1   No one suggests that Officer Guess did not have the right to respond to the Starbucks

2   manager's concerns by going and attempting to *talk* to Bojcic. Until and unless he obtained more

3   information, however, it does not appear as a matter of undisputed fact on the present record that

4   Officer Guess had the right to detain or seize Bojcic.  An issue of fact arises as to whether, by

5   placing his hands on Bojcic to pull him to his feet,  Guess crossed the line from merely talking and

6   effected an impermissible seizure without the requisite reasonable suspicion of criminal activity.

7   Furthermore, even assuming Officer Guess did have a reasonable suspicion a crime had been

8   committed, it is not determinable as a matter of law that pulling Bojcic as forcefully as it was

9   described by some witnesses was a reasonable exercise of force under the circumstances.    There is

10   no evidence that any safety concern or other reason required pulling Bojic to his feet, apart from

11   Officer Guess's apparent frustration that Bojcic was not being as responsive as the officer wanted

12   him to be.  There is evidence that Bojcic had asked to be left alone and had indicated he did not want

13   to stand because of some problem with his legs.  At that point in time, by his own admission, Officer

14   Guess was only *investigating* the possibility that a trespass or a violation of a smoking ordinance

15   might have occurred.

16   Defendants are correct that it has long been recognized an officer's reasonable suspicion that

17   a person may be involved in criminal activity permits the officer to stop the person for a brief time

18   and take additional  investigative steps. See *Terry v. Ohio*, 392 U.S. 1 (1968).  Additionally, it is

19   even permissible for an officer to *arrest* a person who fails to identify himself or herself in such

20   circumstances, at least where a statute requires such identification. *Hiibel v. Sixth Judicial District*

21   *Court of Nevada*, 542 U.S. 177 (2004).  Defendants have pointed to no authority, however, that

22   would permit an officer to begin physically manhandling a person who is merely non-

23   communicative in the face of an officer's verbal questions, in the absence of other extenuating

24   circumstances.

25   Finally, despite the broad consistency of the witness accounts, the present record also does

26   not permit a determination that Officer Guess's use of a taser was reasonable as a matter of law.

27   Some witnesses suggest that at the time the taser was deployed, Bojcic was in a defensive position,

28   and had not yet threatened or behaved aggressively towards Officer Guess or anyone else.

9

United States District Court

For the Northern District of California

1   Determining whether a particular application of force was reasonable "requires careful attention to

2   the facts and circumstances of each particular case, including the severity of the crime at issue,

3   whether the suspect poses an immediate threat to the safety of the officers or others, and whether he

4   is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386,

5   396 (1989).   If the trier of fact concludes from the testimony that Bojcic was not threatening

6   anyone, not fleeing, and that no other circumstances made it crucial to subdue him as quickly as

7   possible, it seems at least possible the trier of fact could also conclude that use of a taser was

8   unreasonable.

9          The finder of fact, of course, will be constrained by the rule that, "[t]he 'reasonableness' of a

10  particular use of force must be judged from the perspective of a reasonable officer on the scene,

11  rather than with the 20/20 vision of hindsight. *Graham*, *supra*, 490 U.S. at 396.  The fact finder,

12  however, will have the benefit of making its determinations on a fully-developed record, where the

13  credibility of witnesses may be weighed.

14         Given all of these circumstances,  the Court cannot find the absence of any independent

15  constitutional violation constituting reckless or intentional provocation as a matter of law.  To be

16  sure, no matter how roughly Bojcic may have been grabbed by Officer Guess, his subsequent

17  conduct was not a rational or proportionate response.  As noted in *Billington,* however, the

18  unreasonableness of Bojcic's response only raises a question as to "the scope of liability, or what

19  harms the constitutional violation proximately caused."  292 F.3d at 1190.

20

21         B.  Qualified Immunity

22         The remaining issue, therefore, is whether Officer Guess could be granted qualified

23  immunity at this juncture.  With respect to the alleged physical grabbing of Bojcic, Guess is taking

24  the position that it did not occur, not that he could not reasonably have known it was excessive force

25  under the circumstances.  If Officer Guess's use of the taser is ultimately found to have been

26  unlawful, he may have a better argument for qualified immunity as to that conduct, because the law

27  on appropriate taser use is evolving.  Nevertheless, the mere fact that a body of law has not emerged

28  regarding a newly-developed weapon cannot serve to innoculate police officers from liability for *any*

10

**United States District Court**
For the Northern District of California

1  use of that weapon without regard to the circumstances.  Accordingly, the Court declines to

2  conclude on the present record that Officer Guess is entitled to qualified immunity for the taser use.[4]

3

4     B. *Monell* Liability

5     Under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978) and its

6  progeny, "[a] municipality or government entity cannot be found liable under section 1983 on a

7  respondeat superior theory; such liability can be imposed only for injuries inflicted pursuant to an

8  official government policy." *Tanner v. Heise*, 879 F.2d 572, 582 (9th Cir. 1989).

9     Here, defendants adequately demonstrated in their moving papers that no evidence exists to

10 support a finding that the City may be held liable for the alleged conduct of Officer Guess, thereby

11 shifting the burden to plaintiffs to demonstrate the existence of triable issues of fact to the contrary.

12 See *Celotex*, *supra,* 477 U.S. at 322-23.*; Anderson*, *supra*, 477 U.S. at 247-48.   Plaintiffs have

13 offered no evidence that the alleged conduct of Officer Guess was undertaken pursuant to, or as the

14 result of, any official governmental policy or the lack thereof.  Instead,  plaintiffs merely *argue* that

15 Officer Guess should have been better trained, so that he would not have made the various tactical

16 errors they contend he made.

17    There are at least two problems with this argument.  First, as reflected in *Billington* and in

18 the discussion above, many of the supposed deficiencies in Officer Guess's tactics simply do not

19 support liability.  Second, and more fundamentally, plaintiffs have made no factual showing

20 whatsoever that anything Officer Guess did or failed to do was the result of inadequate or improper

21 training.  In essence, plaintiffs are saying that because Officer Guess did not handle the situation as

22 they believe he should have,  it is possible to *infer* that the City's policies and training procedures

23 are deficient. Standing alone, however, that inference is insufficient to create a triable issue of fact,

24 because the same inference would exist in every excessive force case, and liability for the

25 municipality would automatically flow from liability of the officers.  That is not the law. *See Monell*,

26 436 U.S. 658.  Even if plaintiffs succeed in persuading a trier of fact that Officer Guess violated the

27

28    [4] The possibility remains that the Court will conclude at trial that qualified immunity applies to some or all of Officer Guess's conduct.

11

United States District Court

For the Northern District of California

1  Constitution, there is no evidence from which a reasonable fact finder could conclude this was

2  anything other an individual officer acting unlawfully.

3

4      C. <u>State Law Claims</u>

5      The City moves to dismiss the state law claims, contending plaintiffs failed to present a tort

6  claim.  Plaintiffs' former counsel has submitted a declaration that he did present such a claim.

7  Although certain inconsistencies in the documentation raise questions on whether the claim was

8  properly presented, the Court concludes that summary judgment at this juncture would be

9  inappropriate.[5]

10

11                         IV.  CONCLUSION

12      The City of San Jose's motion for summary judgment that it has no liability herein under

13  *Monell* is granted.  In all other respects, the motion is denied.

14

15  IT IS SO ORDERED.

16  Dated: September 26, 2007

                        _____
17                        RICHARD SEEBORG
                        United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27      [5] In the reply brief and at the hearing, defendants raised additional grounds they contend
28  would support summary judgment as to the state law claims.  Because those arguments were not
    presented in the moving papers, plaintiffs did not have fair notice and they will not be considered.

12

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

Rebecca Connolly     Rebecca.Connolly@grunskylaw.com, Alice.Wilkerson@grunskylaw.com

Clifford S. Greenberg     cao.main@ci.sj.ca.us

Kevin Roy McLean     krm@bellilaw.com, webmaster@bellilaw.com

Cal J. Potter , lll     lpotter@potterlawoffices.com

Randall H. Scarlett     rscarlett@scarlettlawgroup.com, reormiston@scarlettlawgroup.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

**Dated: 9/26/07**                                                 **Chambers of Judge Richard Seeborg**

**By:**          **/s/ BAK**

13